## Saridakis v. Ambridge Savings and Trust Company.

*Contract—Breach—Duty of party to mitigate damages—Renewal of bank certificate of deposit.*

1. A party injured by a breach of contract must make reasonable exertions to render the injury as light as possible, and he cannot recover for any loss which he might have avoided with ordinary care and reasonable expense; and this is especially so where one of the contracting parties has acquired notice of the breach of contract and makes no reasonable effort to mitigate the damages.

2. Where a Greek owning a certificate of deposit issued by a Greek bank for pounds sterling, delivers it to a trust company with instructions to have it renewed in pounds, and the company has it renewed in drachmas instead of pounds on a falling market for drachmas, and the renewed certificate drawn to the order of the customer is tendered to him, he is entitled, in an action against the trust company, to recover, not the highest value of the face of the old certificate in pounds between the time of the trust company's default and the trial, but the difference between the value of the old certificate and the value of the new certificate at the time plaintiff had notice of the return of the new certificate and refused to accept it.

3. In such case, the plaintiff was bound to prove the value of the old certificate.

4. If it appears from the affidavit of defence and from proofs at the trial that defendant contended that plaintiff required the renewal of the certificate in drachmas and not in pounds, it is immaterial that the affidavit of defence did not touch on the question of the value of the old certificate. Such omission did not in any way relieve plaintiff from proving his damages.

Motions for judgment *n. o. v.* and for new trial. C. P. Beaver Co., Sept. T., 1922, No. 165.

*W. A. McConnel* and *W. S. Maxey,* for plaintiff.

*Hice, Morrison, May & Bradshaw,* for defendant.

BALDWIN, P. J., Aug. 25, 1923.—This is a singular case. No case very like it on the facts has been cited to us, and our research has disclosed none.

The plaintiff (a Greek) was the owner of two certificates of deposit in the National Bank of Greece, one, No. E-309,375, for 4102 francs, and the other, No. 309,474, for 304 pounds, 14 shillings and 6 pence. On June 8, 1921, he took these certificates to the defendant bank, to be by it forwarded to the Bank of Greece for renewal. The bank took the certificates and gratuitously undertook to forward them as requested. The certificate for francs was not due, it seems, until July 6, 1922, while the certificate in English money was overdue.

4 D. & C.

Saridakis *v.* Ambridge Savings and Trust Company.

Plaintiff contends that he merely instructed the defendant to have the certificates renewed; while defendant contends that he further requested that they be converted into drachmas. Defendant forwarded both certificates, with instructions to the Bank of Greece to renew the same in terms of drachmas. According to Mr. Matthews, defendant's clerk, who handled the transaction on behalf of the defendant, the Bank of Greece refused to renew the certificate for francs unless plaintiff would consent to a certain discount thereon. At any rate, the certificate for francs was finally returned to the plaintiff, and is of no particular importance in the present controversy, except in so far as the fact that it was not due for more than a year corroborates the defendant's contention that the plaintiff desired it to be converted into drachmas.

The Greek bank converted the other certificate, as requested, into drachmas and returned it to the defendant, who received it by mail early in November, 1921. Mr. Matthews then tendered it to plaintiff, but the plaintiff refused to accept it, saying that he had not authorized the conversion of same into drachmas. Mr. Matthews replied that the conversion was in accordance with plaintiff's instructions given when the certificates had been left for renewal. On the day this conversation occurred—fixed by Mr. Matthews as Nov. 7, 1921—the drachma had fallen in the market from $6.23 per hundred on June 8, 1921, to $4.25 per hundred.

Both plaintiff and Mr. Matthews say that in this conversation of Nov. 7, 1921, the defendant, with the consent of the plaintiff, undertook to return the certificate (in drachmas) to the Bank of Greece, with the request that the old certificate be returned. Accordingly, the defendant later returned the certificate with such request. But in March, 1922, both certificates were returned by the Bank of Greece to the defendant, the Bank of Greece having refused to reconvert the certificate.

It does not seem to be denied that plaintiff was informed of the refusal of the Bank of Greece to reconvert the new certificate or return the old certificate, and that he was requested to call and receive the certificates. It appears that he then visited the bank and examined the certificates. He testified that he refused them because he overheard a conversation between the president and vice-president of the bank, in which the president advised the vice-president to "get my receipt and give me a new receipt instead of that with the certificates." Mr. Matthews testified that on this occasion the plaintiff, having examined the certificates, returned them to the bank, saying that he would come back later and get them, and keep them in the bank. In the meantime, and also following the month of March, 1922, the drachma continued to drop in the market, until at the time of the trial of this case it had reached the low mark of $1.24 per hundred. In the same period the pound increased somewhat.

As we see it, the relation between the plaintiff and defendant was not that of bailor and bailee, but that of principal and agent. Whether the certificates were to be renewed merely, as the plaintiff contends, or renewed and converted into drachmas, as the defendant contends, the original certificates were to be surrendered and new paper issued. If this was the case, there was no bailment. But in either case, as the defendant was acting gratuitously, we take it that it owed the plaintiff the duty of merely slight care in executing the commission. So it is, perhaps, immaterial that the case was tried on the theory that the defendant was a bailee of the property.

But, assuming that plaintiff's contention is correct and that defendant negligently executed the commission, what was the measure of damages? Plain-

tiff's theory is, that the measure of damages was the highest value of the face of the old certificate (in English money) between the time of defendant's default and the time of trial. We adopted this theory, and the plaintiff was permitted to recover a verdict accordingly, and that without reference to the value of the new certificate (in drachmas). We think that this was wrong. The new certificate is neither transferable by endorsement, nor assignable. It is made out to the plaintiff and available to no one else. Hence, it seems clear that plaintiff could not, in any event, recover more than the difference between the value of the two certificates. Had the defendant appropriated the certificate to its own use, a very different situation would be presented, and the plaintiff would undoubtedly be entitled to recover the highest price reached by the certificate between the conversion and the trial: Musgrave v. Beckendorff, 53 Pa. 310.

But there is a principle which we think is applicable here, the effect of which would be to limit the plaintiff's damages to the loss suffered by him at the time he had notice of the refusal of the Bank of Greece to return the old certificate. This principle is thus stated in 13 Cyc., 73: "A party injured by a breach of contract must make reasonable exertions to render the injury as light as possible; and he cannot recover for any loss which he might have avoided with ordinary care and reasonable expense. This rule is especially applicable where one of the contracting parties has acquired notice of the breach of contract and makes no reasonable effort to mitigate the damages claimed."

The plaintiff in the case at bar had final notice in March, 1922, of the refusal of the Bank of Greece to return the old certificate. All the damage done by defendant's request to convert his certificate into drachmas had then been incurred. Hence, we do not doubt that reasonable care required him to accept the new certificate, which, as we have seen, was of no value to the defendant. His damages, therefore, would be assessable as of that date.

One other matter requires consideration. We think it was incumbent upon the plaintiff to prove the value of the certificate, and that its value was not proved by proof of the value of the money in which it was expressed. The certificate was simply the declaration of the Bank of Greece that it owed the plaintiff the number of pounds, shillings and pence therein named, and its agreement to pay interest thereon according to the terms of the certificate. It is true that the affidavit of defence does not deny that its value was as plaintiff contends; but the plaintiff does not aver in his statement (nor did he prove at the trial) the value of the certificate. The statement simply avers plaintiff's ownership of the certificate, the delivery of same to defendant to be forwarded for renewal, and the neglect and refusal of defendant to return the same to plaintiff, to the damage of the plaintiff in the sum named in the statement.

Inasmuch as the defence set forth in the affidavit of defence, and made at the trial, was that plaintiff expressly requested the conversion of said certificates into drachmas, it is of no importance that the affidavit of defence does not touch the question of the value of the certificate in controversy. We do not understand that this in any way relieved the plaintiff from proving his damages.

These considerations require the granting of a new trial, and it will be so ordered.

*Order.*—Now, Aug. 25, 1923, the motion for judgment *n. o. v.* is overruled. Rule absolute and a new trial granted.        From F. H. Laird, Beaver, Pa.